FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

SEP 1 2 2011

D. MARK JONES, CLERK
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | REPORT AND RECOMMENDATIONS |
| Plaintiff, | : | |
| v. | : | 2:10-cr-00867-TS |
| NELSON MEDINA, | : | |
| Defendant. | : | |
| | : | |

Before the Court is defendant Medina's Motion to Suppress (File Entry #64). After thorough review and consideration of the testimony and evidence presented at the evidentiary hearing and the parties' pleadings, the Court recommends that defendant's Motion to Suppress (File Entry #64) be DENIED.

## FACTS

Officer Joe Neighbor of the Washington City Police Department has nearly ten years law-enforcement experience during which time he conducted nearly a thousand traffic stops and participated in extensive training regarding drug-trafficking. (Transcript, 04/06/2011, Evidentiary Hearing at 5-6.)

On August 28th, 2010, while on Patrol, Officer Neighbor stopped at a red light at the intersection of Green Springs Drive and Telegraph. (Tr. at 6-7.) Officer Neighbor is (and was at the time) particularly aware of this intersection because of its frequent traffic accidents and red-light violations. (Tr. at 7-8, 11.) He could see the traffic light directing his own travel and, because he was the first car in line, he could see (above his head) the traffic lights facing the

opposite lanes of traffic. (Tr. at 7-10, 35-38.)

Defendant Medina was driving a Toyota Camry opposite Officer Neighbor at the intersection--attempting to turn left in front of the officer and enter I-15. Medina, however, entered the intersection late and Officer Neighbor watched him run a red light. (Tr. at 10,13.) Neighbor promptly pulled over the Camry and ran a routine check on the vehicle. (Tr. at 11-12.) Upon approaching the Camry, Officer Neighbor saw two male occupants--a driver (Medina) and a passenger (Cespedes). Officer Neighbor explained to Medina the reason for the stop--running the red light–and asked Medina, "...if he was aware that he ran the light, or if he was watching the light, or if he was just following traffic. He [Medina] replied he was just following traffic". (Tr. at 13.)

Officer Neighbor obtained identification from both occupants and learned the Camry belonged to a man named Walter Taibo. (Tr. at 10-13.) Medina and Cespedes suggested they borrowed the car from a friend and were traveling back to Salt Lake City after visiting friends in Las Vegas. (Tr. at 13-15.) After hearing this brief explanation, Neighbor ran a check on both men's licenses and learned that both licenses were revoked or suspended. (Tr. at 17-18.) Additionally, an arrest warrant existed for Medina's arrest. (Tr. at 17.) According to custom, after discussing the warrant with Medina, Neighbor called for back-up and arrested him. (Tr. at 18-19, 44.) Since Cespedes possessed only a revoked license, he could not drive the vehicle. So, Officer Neighbor asked both men if they knew anyone that could pick up the car. (Tr. at 19-20.) Cespedes made a phone call, but neither he nor Medina knew anyone that could pick up the car within a reasonable time. (Tr. at 19-20.) Following protocol, Officer Neighbor began the process to impound the Camry--including an inventory search. (Tr. at 21-23.)

While performing the inventory of the Camry's trunk, Officer Neighbor discovered a

package wrapped in Saran Wrap with mustard and pepper lining its inside. (Tr. at 23.) Despite

being asked, neither Medina nor Cespedes claimed ownership of the package. (Tr. at 24.) As

part of the inventory, Officer Neighbor opened the package to verify its contents. (Tr. at 23.)

Inside the Saran Wrap was a layer of foil, which covered a Ziploc baggie with a large dealer-size

quantity of methamphetamine. (Tr. at 24-25.)

After finding the methamphetamine, Officer Neighbor conversed briefly with defendant

Medina, who then declined speaking further with the officer.

Officer Neighbor pushed no further. And, at no point did Medina ask for an attorney.

(Tr. at 46-48.) Cespedes was also arrested. (Tr. at 25-26.) After discussing the case with the

drug task-force, Officer Neighbor drove Medina to the task-force office in the back of his patrol

car. (Tr. at 28.) During the drive, Officer Neighbor and Medina made unremarkable small talk.

(Tr. at 28.) Then, after a brief moment of silence, and without any prompting or questioning

from Officer Neighbor, Medina motioned with his head toward the methamphetamine and asked

how much "time" Officer Neighbor thought he (Medina) would get. (Tr. at 28-29.)[1]

At the task-force office, Detective Matt Page interviewed Medina. (Tr. at 52.) About an

hour elapsed between Medina's arrest and his interview with Detective Page. (Tr. at 51-52.)

Medina was uncuffed, appeared comfortable, and accepted a beverage. (Tr. at 53.) Detective

Page first recited Medina's *Miranda* rights and then asked if Medina would be willing to talk to

him. (Tr. at 53-54.) Medina nodded affirmatively, said "yes," and started talking with Detective

Page, but at no point asked for an attorney. (Tr. at 54, 60-61.) While talking to Page about the

drugs Medina said, "I fucked up." (Tr. at 55-56.) Medina also said he does not sell drugs but

was getting paid a thousand dollars to transport the drugs. (Tr. at 56.) The proceeds of the

---

[1] Medina's question regarding "time" appears to be a voluntary expression not made in response to interrogation by Officer Neighbor. Accordingly, defendant appears to not seek its suppression.

transport were to be split with Cespedes. (Tr. at 56-57.) After discussing these things, Medina

asked if he could still have the right to an attorney, so Detective Page terminated the interview.

(Tr. at 57-58.)

## ANALYSIS

### I. Introduction

Defendant made two arguments in his brief--one regarding Detective Page's

interrogation; and one regarding Detective Page's testimony. After defendant filed his brief, the

Court allowed an additional evidentiary hearing regarding defendant's second argument

(pertaining to Detective Page's testimony). After the hearing, defendant filed a "Motion to Strike

Defendant's Second Argument in His Memorandum in Support of Motion to Suppress."

Accordingly, only one issue remains before the Court: Whether Detective Page properly

interrogated Medina thus properly eliciting Medina's post-*Miranda* confession.

### II.    Detective Page Properly Interviewed Defendant Medina

Medina argues that "Detective Page violated [his] rights when he interrogated [him] after

he had asserted his right [with Officer Neighbor] to remain silent." (Def. Br. at 8.) The Supreme

Court--as interpreted by the Tenth Circuit--has identified four relevant factors when determining

if a second attempt at an interview was valid: "(1) at the time the defendant invoked his right to

remain silent, the questioning ceased; (2) a substantial interval passed before the second

interrogation; (3) the defendant was given a fresh set of *Miranda* warnings; and (4) the subject of

the second interrogation was unrelated to the first." *See, e.g., United States v. Rambo*, 365 F.3d

906, 911 (10th Cir. 2004)(citing *Michigan v. Mosley*, 423 U.S. 96, 103)(1975); *see also United

States v. Guerrero*, 524 F.3d 5, 12 (1st Cir. 2008)(explaining factors slightly differently than the

4

10th Circuit)(citing *Michigan v. Mosley*, 423 U.S. 96, 103 (1975)).

Defendant concedes Detective Page's interrogation of Medina is valid as measured by the the first three elements. That is, (1) Officer Neighbor did not question Medina after he invoked his right to remain silent; (2) a substantial interval passed between Officer Neighbor's and Detective Page's interactions with Medina; and (3) Detective Page gave Medina a fresh set of *Miranda* warnings. Accordingly, the Court need only consider the final factor: (4) whether the second interrogation concerns the same subject as the first interrogation.

The Court determines that Detective Page's interrogation was proper under the fourth "same subject" factor because (1) it was not a *second* interrogation; and (2) even if it were a second interrogation, it was allowable under existing law.

### A. Detective Page's questioning of Medina was not a second interrogation

In the context of *Miranda* rights, the Supreme Court defined "interrogation" as words or actions "on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Whether police action is likely to elicit an incriminating response is based "primarily upon the perceptions of the suspect, rather than the intent of the police." *Id.* "But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Id.* at 301-02.

Officer Neighbor merely asked Medina whether he would like to talk. In other words, the Officer asked Medina whether he was willing to subject himself to interrogation; he did not interrogate him. Simply asking a suspect whether he would like to talk is not "reasonably likely

to elicit an incriminating response." If so, it would defeat the purpose of the question--that is, leaving to defendant whether he wanted to answer questions or incriminate himself. Thus, from Medina's perception, he was in total control. Medina's refusal establishes this very point.

The Tenth Circuit has explained that an officer asking a suspect whether he could search a trunk did not amount to interrogation--even though the suspect made an incriminating response in return. In other words, the trial "court did not err in admitting the inculpatory" statements made "in response to the trooper's request to search the trunk." *United States v. Gay*, 774 F.2d 368, 379-80 (10th Cir. 1985)(explaining that "We cannot agree that the request to search the trunk was accusatory. Such a request generally cannot be said to lead to an incriminating response. Furthermore, the incriminating portion of the statement was unresponsive to the request. It would be unreasonable to hold the troopers accountable for an unforeseen answer to a straightforward question"). Similarly, any incriminating responses Medina might have made to Officer Neighbor (none were made in response to questions) would not have been responsive to the simple question of whether he wanted to talk. Officer Neighbor's question was designed for a simple "yes" or "no" response--which Medina obviously understood. And, as soon as Medina indicated he did not want to talk, Officer Neighbor stopped the conversation. Since there was no reasonable likelihood of an incriminating response, Officer Neighbor did not "interrogate" Medina. Therefore, the later interrogation by Detective Page was not a *second* interrogation. If Detective Page's interrogation was not a second interrogation, then the interrogation could not have concerned the same crime as the non-existent first interrogation.

The length of the conversation Officer Neighbor had with Medina sheds additional light on its non-interrogative nature. The whole conversation lasted eighteen seconds. Fourteen of the eighteen seconds were Officer Neighbor reciting Medina's *Miranda* rights to him. Hence, the

6

"interrogation" alleged by defendant (that is, Officer Neighbor asking Medina if he wanted to talk and Medina responding negatively) took four seconds. That is not interrogation as contemplated by *Miranda*.

### B. Even if Officer Neighbor "interrogated" Medina, the fourth factor (the "same-subject" factor) is not dispositive

The Supreme Court has explained "that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his right to cut off questioning was scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 105 (1975). In an unpublished opinion by the Tenth Circuit, the Court rejected the defendant's argument that *Mosley* is a "bright-line test to determine whether a suspect's right to cut off questioning was 'scrupulously honored.'" *Robinson v. Attorney General of State of Kansas*, 28 Fed.Appx. 849, 853 (10th Cir. 2011)(quoting *Weeks v. Angelone*, 176 F.3d 249, 268 (4th Cir. 1999). Instead, the court said that "the touchstone is whether a review of the circumstances leading up to the suspect's confession reveals that his right to cut off questioning was fully respected." *Robinson v. Attorney General of State of Kansas*, 28 Fed.Appx. 849, 853 (10th Cir. 2011)(citing *Mosley*, 423 U.S. at 104; *see also United States v. Schwensow*, 151 F.3d 650, 659 (7th Cir. 1998)).

The Seventh Circuit held similarly:

> This circuit has not yet ruled on the issue of whether *Mosley* is satisfied when a suspect invokes his right to silence and the police later resume questioning regarding the same crime. However, many of our sister circuits have addressed this very question and concluded that a second interview is not rendered unconstitutional simply because it involved the same crime as previously discussed. United States v. Andrade, 135 F.3d 104, 106-07 (1st Cir. 1998); Hatley v. Lockhart, 990 F.2d 1070, 1074 (8th Cir. 1993); United States v. Hsu, 852 F.2d 407, 410 (9th Cir. 1988); Jackson v. Dugger, 837 F.2d 1469, 1471-72 (11th Cir. 1988); United States v. Smith, 608 F.2d 1011, 1014-15 (4th cir. 1979); Wilson v. Henderson, 584 F.2d 1185, 1188-89 (2d Cir. 1978). The Ninth circuit, for instance, has adopted a flexible approach to post-Mosley cases that focuses on whether fresh warnings were given at the start of the second interview and whether the police exerted pressure on a suspect to extract information. The amount of time between interrogations or the subject matter discussed are not determinative. Hsu, 852 F.2d at

410-11. And the Eighth Circuit seeks to determine whether the police 'persisted in repeated efforts to wear down the person's resistance in order to change the person's version of the facts.' United States v. McClinton, 982 F.2d 278, 282 (8th Cir. 1992) (quoting Mosley, 423 U.S. at 105-06, 96 S.Ct. 321).

*United States v. Schwensow*, 151 F.3d 650, 659 (7th Cir. 1998).

To quote again, the Seventh Circuit joined its sister circuits:

[T]he constitutionality of a subsequent police interview depends not on its subject matter but rather on whether the police, in conducting the interview, sought to undermine the suspect's resolve to remain silent. This approach naturally follows from Mosley, which neither elevates any one factor as predominant or dispositive nor suggests that the enumerated factors are exhaustive, but instead directs courts to focus on whether the confession was obtained in a manner compatible with the requirements of the Constitution. Miller v.Fenton, 474 U.S. 104, 112 (1985).

*United States v. Schwensow*, 151 F.3d 650, 659 (7th Cir. 1998).

Similarly, the First Circuit held that "although this second interrogation concerned the same crime as the first, it is clear that [defendant] was in control of the decision to provide a statement." *United States v. Guerrero*, 524 F.3d 5, 12 (1st Cir. 2008). Also," courts must look to the totality of the circumstances, and 'the key inquiry remains whether defendant was in charge of the decision whether and to whom he would speak.'" *United States v. Guerrero*, 524 F.3d 5, 12 (1st Cir. 2008)(quoting *United States v. Thongsophaporn*, 503 F.3d 51, 57 (1st Cir. 2007), *United States v. Andrade*, 135 F.3d 104, 107 (1st Cir. 1998)).

Stated more broadly by the Tenth Circuit, [t]o establish a waiver of the Fifth Amendment rights, the government must show (1) that the waiver was voluntary in the sense that it was a product of free and deliberate choice rather than intimidation, coercion, or deception; and (2) that the waiver was made in full awareness of the nature of the right being waived and the consequences of waiving. Only if the totality of the circumstances surrounding the interrogation shows both an uncoerced choice and the requisite level of comprehension can a waiver be effective." *United States v. Hernandez,* 93 F.3d 1493, 1501 (10th Cir. 1996)(citing *Colorado v.*

*Connelly*, 479 U.S. 157, 168 (1986) and *United States v. March*, 999 F. 2d 456, 460 (10th Cir.1993)).

Detective Page interviewed Medina about a crime. The topic of the interview concerned the same crime with which Officer Neighbor was concerned. However, Medina was under no pressure to talk to Detective Page. Medina's surroundings were comfortable--he was uncuffed, sitting in a chair, and had accepted a drink. Both Officer Neighbor and Detective Page fully respected Medina's *Miranda* rights--as evidenced by both stopping conversations upon Medina's various requests. No evidence of intimidation, coercion, or deception exist. No undermining occurred. Rather, the record shows that Medina knew and understood his rights and the consequences of waiving them--invoking them twice in the same day. When asked by Officer Neighbor if he wanted to talk, Medina said, "No." In fact, after Medina invoked his right to remain silent, he asked Officer Neighbor how much "time" he would get for the methamphetamine. (Tr. at 28-29.) Such occasion could have been an opportunity for an officer (who was not scrupulously honoring Medina's right to silence) to pursue additional interrogation; Officer Neighbor did not.

Later, when asked by Detective Page if he would be willing to talk, Medina nodded and answered, "Yes." (Tr. 54, 60-61.) During that interview with Page, Medina requested a lawyer, and the interview promptly ended. Accordingly, even if Detective Page's interrogation was a second interrogation, Detective Page (and Officer Neighbor) respected Medina's right to silence and left Medina in control of his decision to talk. Medina provided an uncoerced confession while fully comprehending his rights. Hence, the Court determines that his post-*Miranda* incriminating statements offered in response to Detective Page's interrogation should remain in the case.

## RECOMMENDATION

Based upon the foregoing analysis, IT IS HEREBY RECOMMENDED that defendant's Motion to Suppress (File Entry #64) be DENIED.

Copies of the foregoing Report and Recommendation are being delivered to the parties who are hereby noticed of their right to object to the same. The parties are further notified that they must file any objections to the Report and Recommendation with the clerk of the District Court, pursuant to 28 U.S.C. § 636(b) within 14 days of receiving it. Failure to file objections to both factual and legal findings may constitute a waiver of those objections on subsequent appellate review.

DATED: 9-12-11

BY THE COURT:

ROBERT T. BRAITHWAITE
U.S. Magistrate Judge

10